Nick Baltaxe (SBN 329751)
**DUANE MORRIS LLP**
865 South Figueroa Street, Suite 3100
Los Angeles, CA 90017
E-mail: nbaltaxe@duanemorris.com

Gerald L. Maatman (IL 6181016) *(pro hac vice application pending)*
Jennifer A. Riley (IL 6272366) *(pro hac vice application pending)*
**DUANE MORRIS LLP**
190 S. LaSalle Street, Suite 3700
Chicago, IL 60603
E-mail: gmaatman@duanemorris.com
jariley@duanemorris.com

Attorneys for Defendant,
CAPSTONE LOGISTICS, LLC, a limited liability company

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACOB SAIGE & REGINALD MCOWENS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CAPSTONE LOGISTICS, LLC, a limited liability company; and DOES 1 through 25, inclusive<br><br>Defendants. | Case No. 5:24-cv-00195-RGK-SHK<br><br>**DECLARATION OF SCOTT DICKINSON IN SUPPORT OF DEFENDANT CAPSTONE LOGISTICS, LLC'S MOTION TO COMPEL ARBITRATION**<br><br>Date: [_____], 2024<br>Time: 9:30 a.m.<br>Judge: Hon. R. Gary Klausner<br><br>*[Filed concurrently with Memorandum of Points and Authorities, Request for Judicial Notice, and [Proposed] Order]* |

## **DECLARATION OF SCOTT DICKINSON**

I, Scott Dickinson, declare as follows:

1. I have personal knowledge of the matters stated herein, and, if called to testify, I could and would do so competently.

2. I am currently employed by Capstone Logistics, LLC ("Capstone") as the Senior Human Resources Information Systems ("HRIS") Manager. I have held this position for Capstone since May 2022 and, before that, I served as the HRIS Manager for Capstone and its predecessor since December 28, 2009. In my position, I oversee the electronic systems onboarding process used by Capstone, including the team that manages that process. I also oversee the electronic roll-out of new Capstone policies, including the team that manages that process.

3. As HRIS Manager, I am familiar with and have access to electronic application, onboarding, and wage systems and records, including those associated with Plaintiffs Jacob Saige and Reginald McOwens. Also because of my work at Capstone, I am familiar with Capstone's business, have access to employees' personnel records, and know how they are made and kept in the regular course of business.

**Jacob Saige Accepts The Arbitration Agreement Through Recruiting Management**

4. Beginning in or around October 2016, Capstone began using a system called Recruiting Management, or "RM." RM is a paperless, web-based system for tracking applicants and onboarding new hires. RM permits new hires to view, download, and print the Capstone Associate Handbook and Capstone's Employment-At-Will And Arbitration Agreement.

5. When an individual applies for employment at Capstone through RM, the individual creates a profile with a unique username and password. This information is stored in the system and cannot be accessed or altered by Capstone personnel. The individual also provides a personal e-mail address to receive notifications and correspondence from the RM system.

6. RM stores certain records and documents completed through RM, such as onboarding and tax forms. Once a candidate completes these forms, neither the candidate nor Capstone subsequently can change them.

7. RM requires a candidate to complete each onboarding step in sequence before advancing a candidate to the next step. If a candidate attempts to skip a step, such as the acknowledgment of the Employment-At-Will and Arbitration Agreement or the electronic signature, RM produces an error message that instructs the candidate to complete the particular step. The candidate cannot move forward or move past a step without completing it.

8. After a candidate has completed and submitted the candidate's onboarding form, neither the candidate nor Capstone can go back and change the information in the form.

9. Attached hereto as **Exhibit A** is a true and correct copy of the onboarding form reflecting Mr. Saige's activities performed and recorded in RM, with certain personal information redacted. Exhibit A was kept in the course of a regularly conducted activity of Capstone.

10. On or around August 7, 2021, Mr. Saige created a unique username and password in RM. He then used his unique username and password to log into RM and access his new hire paperwork. The new hire forms included, among other things, federal and state tax withholding forms, the Capstone Associate Handbook, and the Capstone Employment-At-Will and Arbitration Agreement.

11. After Mr. Saige navigated to the onboarding form, he completed the various onboarding steps in sequence: (1) first, Saige completed his personal information, including his date of birth; (2) second, Saige completed his payroll election by selecting "direct deposit" from a drop-down menu; (3) third, Saige identified his emergency contacts by inputting his mother's name and telephone number, along with another emergency contact; (4) fourth, Saige provided banking information to enable Capstone to make direct deposits of his wages; (5) fifth, Saige acknowledged that he received and read the information on how to enroll in Capstone Benefits; (6) sixth, Saige acknowledged that he received, reviewed and accepted the terms of the Associate Handbook; (7) seventh, Saige acknowledged that he received, reviewed and accepted the terms of the Employment-At-Will and Arbitration Agreement; (8) eighth, Saige acknowledged that he received, reviewed and accepted the terms of the Capstone Logistics Loss Prevention Policy; and (9) finally, Saige certified that all of the information provided in the application were true and correct, and electronically signed the onboarding form.

12. To digitally sign his acknowledgement of the receipt and agreement with the Arbitration Agreement and Associate Handbook, Mr. Saige was required to review the applicable acknowledgment language, click the links to view and/or download electronic copies of the Arbitration Agreement (in both English and Spanish) and Associate Handbook, and type his name in the space provided to affirmatively indicate his full acceptance of the policies outlined in the Arbitration Agreement and Associate Handbook. The only way for Capstone's records to reflect that Mr. Saige digitally signed the Arbitration Agreement and Associate Handbook would be for Mr. Saige to have entered his electronic signature, representing his receipt and acceptance of the policies.

13. Capstone's business records, as noted in **Exhibit A,** reflect that Mr. Saige digitally signed an acknowledgement and receipt of, and agreement with, the Arbitration Agreement on August 7, 2021.

14. A true and correct copy of the "Employment-At-Will and Arbitration Agreement" signed by Mr. Saige is attached hereto as **Exhibit B.**

### Reginald McOwens Accepts The Arbitration Agreement Through Lifion by ADP

15. Before Mr. McOwens was hired, Capstone began using a paperless, web-based system called Lifion by ADP ("Lifion") for onboarding new hires. During onboarding, Lifion permits new hires to view, download, and print the Capstone Associate Handbook (the "Associate Handbook") and the Employment-At-Will and Arbitration Agreement (the "Arbitration Agreement"). Capstone permits new hires to read the Associate Handbook and Arbitration Agreement at their own pace during onboarding, and, after starting work with Capstone, Lifion allows employees to return to and access these documents.

16. Once Capstone has decided to hire a new employee and the recruiting process is complete, Lifion generates and sends a personalized link to the individual's personal e-mail address. After clicking on the link, Lifion requires the individual to undergo a multi-factor verification process, that includes verifying the individual's identity through text message or call back. Following the multi-factor verification process, Lifion allows the individual to create a Lifion profile with a unique username and a password. The password is known only to the individual.

17. After an individual creates a profile, Lifion requires the individual to complete a series of onboarding tasks. Lifion tracks the completion of these tasks, and these actions are reflected in the candidate's history. Lifion stores a record reflecting the completion of each onboarding task and can generate a report that reflects their completion. Once a new hire completes these forms, neither the individual nor Capstone subsequently can change them.

18. On or around April 23, 2022, Mr. McOwens used his unique username and password to log into Lifion and access his new hire paperwork. The new hire forms included, among other things, federal and state tax withholding forms and various company policies including the Associate Handbook and the Arbitration Agreement. Mr. McOwens acknowledged the Wisely Payroll Funding Elections and the Employment-At-Will and Arbitration Agreement on April 23, 2022. Thereafter, on July 11, 2022, he logged back into Lifion and acknowledged the remaining outstanding policies.

19. As to the company policies, as seen in **Exhibit C**, Lifion provided Mr. McOwens the Associate Handbook and Arbitration Agreement such that Mr. McOwens could review, download, and/or print them at his leisure. Mr. McOwens accepted these documents, including the Associate Handbook and Arbitration Agreement, by manually clicking an acknowledgement.

20. Lifion required Mr. McOwens to open and view the Associate Handbook and Arbitration Agreement before it permitted him to manually click the acknowledgement and accept the policies. Thus, Capstone's records would not reflect that Mr. McOwens accepted the Arbitration Agreement and Associate Handbook unless Mr. McOwens actually (1) opened and viewed the Arbitration Agreement and Associate Handbook, and (2) manually checked the box on the Acknowledgement Page, representing his receipt and acceptance of the policies.

21. In other words, if Mr. McOwens had not opened and viewed these policies, he would not have been able to acknowledge that he accepted them, and Mr. McOwens would not have been able to complete the onboarding process. Exhibit C is kept in the course of a regularly conducted activity of Capstone and Lifion.

22. Capstone's business records reflect that Mr. McOwens received, viewed, and accepted the Arbitration Agreement on April 23, 2022.

23. Mr. McOwens signed the same "Employment-At-Will and Arbitration Agreement" as Mr. Saige, a true and correct copy of which is attached hereto as **Exhibit B.**

24. Based on the information above, I can conclude that Mr. Saige – and no other authorized individual – acknowledged the Employment-At-Will and Arbitration Agreement on August 7, 2021.

25. Based on the information above, I can conclude that Mr. McOwens – and no other authorized individual – acknowledged the Employment-At-Will and Arbitration Agreement on April 23, 2022.

I, Scott Dickinson, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and accurate.

Executed on this __1st__ day of March 2024 in Peachtree Corners, Georgia.

3/1/2024

*Scott Dickinson*
_____
Scott Dickinson

# Exhibit A

**CAPSTONE LOGISTICS**

*79033 - Travel Team Selector*
*Aug 7, 2021*

### Personal Information

**Personal Information**

IMPORTANT NOTE: If any of the items on this page are incorrect, <u>please notify your Manager immediately.</u> Failure to report incorrect personal information could delay your pay check or deposits.

**Name:** Jacob Tyler Saige

IMPORTANT NOTE: If any of the items below incorrect or missing, <u>please make the appropriate changes NOW.</u> Failure to report incorrect personal information could delay your pay check or deposits.

| | |
|---|---|
| Date of Birth | 11/23/1992 |
| Address 1 -- Please DO NOT use a P.O. Box | 1152 Lucerne Drive |
| Address 2 | |
| Country | United States |
| State | California |
| City | Hemet |
| Zip Code | 92543 |
| Primary Phone # | (951) 902-7878 |
| Marital Status For Benefits Purposes only | Single |

### Wisely Pay Card Disclosure

You may receive a Wisely Pay card issued by ADP (generally warehouse associates receive one automatically, and non-warehouse upon request).

1. The Wisely Pay card <u>may</u> be used by the company in order to pay you for non-payroll related funds.
2. You have the <u>option</u> to have your payroll related funds paid through the Wisely Pay card.

Click here to review the Wisely Pay card Fee Schedule

Click here to review the Wisely Cardholder Agreement

Click here to review the Wisely Privacy Notice

I acknowledge I have received and read the Wisely Pay card Fee Schedule, Cardholder Agreement, and Privacy Notice. I understand that in order to use the Wisely Pay card, I will need to accept and agree to the Cardholder Agreement and to pay the fees as indicated on the Fee Schedule by activating my Wisely Pay card. I consent to allow my employer to provide my personal information to ADP to enroll in and request a Wisely Pay card. IMPORTANT INFORMATION ABOUT APPLYING FOR A NEW PREPAID CARD ACCOUNT – To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account. What this means for you: When you open a Prepaid Card account, ADP may require your name, address, date of birth, Social Security number, tax identification number and other information that will allow ADP to identify you. ADP may also ask to see your driver's license or other identifying documents. You will not be subject to a credit check.

| | |
|---|---|
| | Jacob Saige Accepted |
| Date Signed | Aug 7, 2021 12:45 am |

### Payroll Funding Election

Jacob, you have three options for funding of payroll related funds:

1. Pay Card
2. Direct Deposit
3. Paper Check

Please select how you would like to be paid below.

| | |
|---|---|
| Payroll Option | Direct Deposit |

### Emergency Contacts

**Emergency Contact 1**

| | |
|---|---|
| First Name | Debbie |
| Last Name | Saige |
| Relationship | Mother |
| Same Address as Employee? | Yes |
| Primary Phone Numbers Only: No dashes or spaces. | 9513337002 |
| Secondary Phone Numbers Only: No dashes or spaces. | |

**Emergency Contact 2**

| | |
|---|---|
| First Name | Natalia |
| Last Name | Medina |
| Relationship | Other |
| Same Address as Employee? | No |
| Primary Phone Numbers Only: No dashes or spaces. | 9515370010 |

Secondary Phone .....................................................
Numbers Only: No dashes or spaces.

Direct Deposit

**Direct Deposit - Consent to Deposit Wages**

I authorize my employer (or its payroll service provider) to initiate credit entries each pay date to deposit my pay (either net or a portion thereof) into the checking and/or savings account(s) indicated below and consent (the "Account"). If funds to which I am not entitled are deposited to my Account, I authorize my employer (or its payroll service provider), to initiate any action to reverse or correct an erroneous credit entry to my Account and to direct the bank to return said funds to my employer (either directly or through its payroll service provider), to the extent permitted by applicable law. I will review my pay statement to ensure that my wages are being deposited correctly into my Account each payroll period. I understand that I can change my election at any time by contacting my employer and that this authorization replaces any previous authorizations and will remain in full force and effect until my employer (or its payroll service provider) has received written notification from me of its termination and my employer (or its payroll service provider) and the bank has had a reasonable opportunity to act on said termination.

|  |  |
|---|---|
| .................................................... | Jacob Saige |
|  | Accepted |
| Time Signed .................................................... | Aug 7, 2021 12:45 am |

**Direct Deposit**

In order to deposit your earnings into your bank acount, we'll need additional information from you. Capstone Logistics will deposit earnings in up to 2 bank accounts and each account must include active bank account information which includes the **9 digit routing number and your account number.**

A separate form is requried for each account you want earnings to be deposited into. A minimum of one form is needed to accomodate your request for direct deposit. You can add 1 additional account now, or add another account through Associate Self-Service. You must have a **valid 9 digit bank routing number and your account number** to complete this form online. If this form is not completed correctly, you will receive a live check. Contact your manager if you have quesitons about this form.

To add additional direct deposit accounts, click the "Add Direct Deposit" button below. The "**Remove Last Direct Deposit**" will delete all entries for the last direct deposit account that you have entered.



Direct Deposit 1

| | |
|---|---|
| Account Type ................................................... | Checking |
| Full Deposit .................................................... | Yes |
| If you elect Full Deposit, DO NOT indicate a Deposit Amount. | |
| ABA/Routing Number | 256074974 |
| Account Number .................................................... | 7121238393 |
| Deposit Amount .................................................... | $0.00 |
| DO NOT ENTER A VALUE HERE IF YOU INDICATED 'YES' FOR FULL DEPOSIT | |
| Financial Institution Name | Navy Federal Credit Union |

Capstone Benefits

**CAPSTONE BENEFITS**

Capstone Associates can now manage benefits enrollment, make changes, access plan documents and much more through ADP's Mobile App, the ADP Self Service portal online or by calling your benefits service center Monday through Saturday.

**Eligibility for Benefits Enrollment:**

Warehouse Associates are eligible to enroll in a wide variety of benefit plans as soon as they have received their first paycheck with Capstone Logistics.

The effective date of your benefits will be the first day of the month following 60 days of employment. Your selection and enrollment should be completed at least two weeks PRIOR to your effective date.

As mentioned above, there are three ways to manage your benefits:

1. Download the ADP Mobile App on a smartphone. Not only will you be able to see your benefit information but you will have access to your payroll information, W-2s as well as other employment related notifications.
2. Log in to myADP.com – The same information available to you through the ADP App is available on-line.
3. Call the benefits Service Center at 1-844-740-3941 where representatives are available 8:00 AM to 8:00 PM EST Monday thru Friday and 8:00 AM to 5:00 PM EST on Saturdays (except Holidays).

 

By entering my name below I acknowledge I have
received and read the information on how to enroll in Jacob Saige
Capstone Benefits.

Capstone Associate Handbook Acknowledgement

ASSOCIATE HANDBOOK ACKNOWLEDGMENT AND STATEMENT OF RECEIPT

I, Jacob Saige acknowledge that I have received, have access to a printed copy, or have been provided access to an electronic copy of the Warehouse Associate Handbook that outlines the policies, procedures, benefits and Associates' responsibilities at Capstone Logistics.

I acknowledge that I have or will read the provisions contained in this Handbook and will familiarize myself with this information. If I am unclear about any of the content included in this handbook, it is my responsibility to request clarification from my manager.

I understand that I may be required to take one or more drug screening tests as a condition of hiring or continued employment. I consent to take such test(s) when designated by Capstone, its parent, its subsidiaries or affiliates and to release Capstone, its directors, officers, agents or Associates from any claims arising from such test(s).

I understand that the information in this handbook is subject to change as situations warrant. The handbook is not all-inclusive, and is only a set of guidelines. I understand the handbook may supersede, modify, or eliminate any previous handbook or unwritten policies and Capstone can change the handbook unilaterally, at any time.

Neither this booklet nor other benefits constitute a contract since either party has the right to terminate this employment-at-will at any time, for any reason or for no reason.

**Click the link below to view or download an electronic copy of the Associate Handbook.**

ASSOCIATE HANDBOOK (English and Spanish)

I, Jacob Saige, acknowledge with my signature below that I have received and Jacob Saige reviewed the Capstone Logistics Associate Handbook document. My          Accepted
signature and indication of agreement indicates my full acceptance of the
policy outlined in the document.

Date Signed: August 7, 2021

Capstone Logistics Employment-At-Will and Arbitration Agreement

**Capstone Logistics Employment-At-Will and Arbitration Agreement**

Please click the link below to download and review the Capstone Logistics Employment-At-Will and Arbitration Agreement document and then enter your name below to indicate your agreement.

Capstone Logistics Employment-At-Will and Arbitration Agreement (English and Spanish)

I, Jacob Saige, acknowledge with my signature below that I have received and Jacob Saige
reviewed the Capstone Logistics Employment-At-Will and Arbitration          Accepted
Agreement document. My signature and indication of agreement indicates
my full acceptance of the policy outlined in the document.

Date Signed: August 7, 2021

Capstone Logistics Loss Prevention Policy Acknowledgement

**Capstone Logistics Loss Prevention Policy Acknowledgement**

Please click the link below to download and review the Capstone Logistics Loss Prevention Policy document and then enter your name below to indicate your agreement.

Capstone Logistics Loss Prevention Policy

I, Jacob Saige, acknowledge with my signature below that I have received and Jacob Saige
reviewed the Capstone Logistics Loss Prevention Policy Agreement document. Accepted
My signature and indication of agreement indicates my full acceptance of the
policy outlined in the document.

Date Signed: August 7, 2021

Confirm and Submit

**ELECTRONIC SIGNATURE: Please type your name as it is listed in the document above:**

I hereby certify that all statements made in this application are true and correct to the best of my knowledge and belief. I authorize past employers, schools, persons and organizations having relevant information or knowledge to release to the Company for its use in deciding whether or not to offer me employment and specifically waive any required written notification. I hereby release employers, schools, persons and organizations from all liability in responding to inquiries in connection with my application. Upon written request by me, within a reasonable period of time, the Company will make available to me the nature and scope of all reports of every type obtained.

| I authorize my Electronic Signature . | Jacob Saige |
| ...................................................... | Accepted |
| **Date** ...................................................... | Aug 7, 2021 12:45 am |

# Exhibit B

# EMPLOYMENT-AT-WILL AND ARBITRATION AGREEMENT

In consideration of my employment and my employer's mutual promise to arbitrate the categories of claims for relief that fall within the scope of this Employment-At-Will And Arbitration Agreement (the "Agreement"), I agree as follows:

1. <u>At-Will Employment.</u> I acknowledge that my employment at Capstone Logistics, LLC (hereafter the "Company," a term which shall include all parent, subsidiary, and affiliate entities, including but not limited to LMS Intellibound, Progressive Logistics Services, Pinnacle Workforce Logistics, and National Freight Handlers, and their owners, directors, officers, managers, employees, or agents) is at-will, shall be for no specific duration, and may be terminated at the will of me or the Company. Both I and the Company have the right to terminate my employment at any time, with or without cause or prior notice. I acknowledge that employment at-will is the sole and entire agreement between myself and the Company concerning the duration of my employment and the circumstances under which my employment may be terminated. This Agreement supersedes all prior agreements, understandings, and representations (whether written or oral) concerning the duration of my employment with the Company and/or the circumstances under which my employment may be terminated. My employment-at-will status may only be changed in a written document signed by the Chief Executive Officer of the Company.

2. <u>Agreement To Arbitrate.</u> Both I and the Company agree to use binding arbitration, instead of going to court, as the sole and exclusive means to resolve any "Covered Claims" that arise or have arisen between me and the Company. I understand and agree that arbitration is the only forum for resolving Covered Claims and that both I and the Company are waiving and relinquishing our respective rights to trial before a judge or jury in federal or state court in favor of arbitration. **I understand that my continued employment with the Company is deemed to be acceptance of this Agreement to Arbitrate.**

3. <u>Covered Claims.</u>  Covered Claims under this Agreement are any claim, dispute, and/or controversy that I may have against the Company, or that the Company may have against me, whether based on tort, contract, statute (including, but not limited to, any claims of discrimination, harassment, retaliation, leave, and/or unpaid wages, whether they be based on Title VII of the Civil Rights Act of 1964, as amended, the Age Discrimination in Employment Act, the Americans with Disabilities Act, the Family Medical Leave Act, the Fair Labor Standards Act, or any other similar federal, state, or local law or regulation which may apply to the parties' employment relationship), equitable law, or otherwise. Covered Claims include but are not limited to any claim, dispute, and/or controversy that may arise out of or be related in any way to my employment, including but not limited to the termination of my employment and my compensation. Covered Claims also specifically include but are not limited to any claim, dispute, and/or controversy that I may have against, or that may be related in any way to the services I or the Company provides to, the Company's business partners or customers and their employees.

4. <u>Excluded Claims.</u> The only exceptions to the requirement of binding arbitration shall be for "Excluded Claims." Excluded Claims are claims for medical and disability benefits, claims for workers' compensation, claims for unemployment benefits, claims asking for emergency or temporary injunctive relief in a court of law in accordance with applicable law (however, after the court has issued a ruling concerning the emergency or temporary injunctive relief, the Company and I are required to submit the dispute to arbitration pursuant to this Agreement), or other claims that are not subject to arbitration under current law. I and the Company acknowledge that through this Agreement, I make no representation or demonstration of support or rejection of concerted

activity. Nothing herein shall prevent me from filing and pursuing proceedings before the United States Equal Employment Opportunity Commission, Department of Labor, and National Labor Relations Board or comparable state agencies, but I understand that I am giving up the opportunity to recover monetary amounts from such proceedings. In other words, I must pursue any claim for monetary relief for Covered Claims through arbitration under this Agreement.

      5.    <u>Waiver of Class and Collective Claims</u>. I and the Company agree that Covered Claims will be arbitrated only on an individual basis. All claims subject to this Agreement shall be brought in the individual capacity of myself or the Company, and shall be brought in the county in which the dispute arose (unless the parties mutually agree otherwise). This Agreement shall not be construed to allow or permit the consolidation or joinder of other claims or controversies involving any other employees or parties, or permit such claims or controversies to proceed as a class or collective action. No arbitrator shall have the authority under this Agreement to order any class or collective action. I and the Company agree to waive any substantive or procedural rights that we may have to participate in, bring, or receive monetary or other relief from any action on a class or collective basis against each other.

      6.    <u>Internal Dispute Resolution</u>. I and the Company value our working relationship, and we acknowledge that addressing issues or concerns internally may help address concerns more efficiently. We agree that we prefer to address any concerns through workplace channels, including by raising concerns with each other, to attempt to resolve any concerns informally before filing for arbitration. In this regard, both the Company and I understand that use of arbitration is intended to be a last resort.

      7.    <u>Rules For Arbitration</u>. To file a demand for arbitration, the party desiring to pursue a legal dispute must prepare a written demand setting forth the claim(s). The employment dispute resolution rules of the American Arbitration Association ("AAA") will apply. The current version can be found here: <u>https://adr.org/employment</u>. I and the Company will be entitled to take discovery as provided by the employment dispute resolution rules of the AAA.

      8.    <u>Selection of Neutral Arbitrator</u>. The arbitrator shall be selected in accordance with the employment dispute resolution rules of the AAA. The arbitrator shall be neutral.

      9.    <u>Arbitrator's Authority</u>. The arbitrator shall have the immunity of a judicial officer from civil liability when acting in the capacity of an arbitrator, which immunity supplements any other existing immunity. The arbitrator shall issue a decision in writing, setting forth the reasons and the legal basis for the arbitrator's determination. The arbitrator shall resolve all disputes based solely upon the law governing the claims and defenses pleaded, and the arbitrator may not invoke any basis (including but not limited to, notions of "just cause") other than such controlling law. The arbitrator shall have the authority to award the same damages and other relief to me and the Company that would have been available in court pursuant to applicable law. Judgment on the arbitrator's award may be entered in any court having jurisdiction over the matter.

      10.    <u>Costs</u>. I understand the Company shall pay all costs uniquely attributable to arbitration, including the administrative fees and costs of the arbitrator. Each side shall pay its own costs and attorneys' fees, if any, unless the arbitrator rules otherwise in accordance with applicable law. If the applicable law affords the prevailing party attorney fees and costs, then the arbitrator shall apply the same standards a court would apply to award such fees and costs.

      11.    <u>Company's Agreement.</u> By presenting me with this Agreement, the Company has agreed to the terms of this Agreement.

       12.    <u>Entire Agreement & Savings Clause</u>.  This is the entire agreement between myself and the Company regarding dispute resolution, the length of my employment, and the reasons for termination of my employment, and this Agreement supersedes any and all prior agreements regarding these issues. Oral representations or agreements made before or after my employment do not alter this Agreement.  If any term, provision or portion of this Agreement is determined to be void or unenforceable it shall be severed and the remainder of this Agreement shall be fully enforceable; provided, however, that if the waiver of class and collective claims is found to be unenforceable, then any claim brought on a class, collective or representative action basis must be filed in a court of competent jurisdiction, and such court shall be the exclusive forum for such claims.

       13.    <u>Condition of Employment</u>.  This Agreement is a condition of my employment with the Company.  By commencing and/or continuing employment with the Company, I am agreeing to this Agreement.  I acknowledge that I have carefully read this Agreement, that I understand its terms, and that I have entered into this Agreement voluntarily and not in reliance on any promises or other representations by the Company.

       14.    <u>Controlling Law</u>.  The Company and I agree that this Agreement is made pursuant to and shall be governed under the Federal Arbitration Act.

**ACUERDO DE EMPLEO VOLUNTARIO Y ARBITRAJE**

En contraprestación por mi empleo y la promesa mutua de mi empleador de arbitrar las categorías de reclamos de indemnización contempladas dentro del alcance de este Acuerdo de empleo voluntario y arbitraje (el "Acuerdo"), acepto lo siguiente:

      1.      <u>Empleo voluntario.</u>  Reconozco que mi empleo en Capstone Logistics, LLC (en adelante, la "Compañía", un término que incluirá a toda casa matriz, subsidiaria y afiliada, incluidas, entre otras, LMS Intellibound, Progressive Logistics Services, Pinnacle Workforce Logistics y National Freight Handlers, y sus propietarios, directores, funcionarios, empleados o agentes) es voluntario, no tendrá una duración específica y puede finalizar por voluntad mía o de la Compañía. Tanto yo como la Compañía tenemos derecho de finalizar el empleo en cualquier momento, con o sin causa o aviso previo. Reconozco que el empleo voluntario representa el acuerdo exclusivo o total entre la Compañía y yo con respecto a la duración de mi empleo y las circunstancias en que este puede terminarse. Este Acuerdo reemplaza todos los acuerdos, entendimientos y declaraciones anteriores (por escrito o en forma oral) con respecto a la duración de mi empleo en la Compañía y/o las circunstancias en que este puede terminarse. Mi condición de empleo voluntario solo puede modificarse mediante un documento escrito firmado por el Director Ejecutivo de la Compañía.

      2.      <u>Acuerdo de arbitraje.</u> Tanto yo como la Compañía aceptamos recurrir al arbitraje vinculante, en lugar de los tribunales, como el único y exclusivo medio de resolver todo "Reclamo cubierto" que surgiera o haya surgido entre nosotros. Comprendo y acepto que el arbitraje es el único foro para resolver los Reclamos cubiertos y que tanto yo como la Compañía renunciamos a nuestros respectivos derechos de iniciar acciones legales ante un juez o jurado en los tribunales federales o estatales a favor del arbitraje. **Comprendo que seguir trabajando en la Compañía se considera mi aceptación de este Acuerdo de arbitraje.**

      3.      <u>Reclamos cubiertos.</u> Los Reclamos cubiertos conforme a este Acuerdo son cualquier reclamo, disputa y/o controversia que yo pudiera tener contra la Compañía o que la Compañía pudiera tener contra mí, ya sea extracontractual, contractual, fundamentada en las leyes (incluidos, sin limitación, los reclamos por discriminación, acoso, represalias, licencias y/o sueldos impagos, basados en el Título VII de la Ley de derechos civiles de 1964 y sus enmiendas, la Ley contra discriminación laboral por edad, las Leyes de trabajo equitativo o cualquier otra ley o reglamentación federal, estatal o local similar que pudiera aplicarse a la relación laboral de las partes), en leyes del sistema del Equity o de otro tipo. Los Reclamos cubiertos incluyen, sin limitación, todo reclamo, disputa y/o controversia que pudiera surgir de mi empleo o estar relacionado con este, incluidos, entre otros, la finalización del empleo y mi remuneración. Los Reclamos cubiertos también incluyen específicamente, sin limitación, cualquier reclamo, disputa y/o controversia que pudiera tener contra los socios comerciales o clientes de la Compañía y sus empleados o que pudiera estar relacionado de cualquier manera con los servicios que yo o la Compañía les prestamos a estos.

      4.      <u>Reclamos excluidos.</u> Las únicas excepciones a la exigencia del arbitraje vinculante son los "Reclamos excluidos". Los Reclamos excluidos son reclamos por beneficios médicos y de discapacidad, reclamos por compensación para trabajadores, reclamos por beneficios de desempleo, reclamos para solicitar órdenes judiciales de emergencia o temporales en un tribunal de conformidad con las leyes aplicables (sin embargo, después de que el tribunal haya emitido una orden judicial, la Compañía y yo debemos someter la disputa a arbitraje de conformidad con este Acuerdo) y otros reclamos que no están sujetos a arbitraje conforme a las leyes vigentes. Yo y la Compañía reconocemos que por medio de este Acuerdo

53241014v.5

no declaro ni demuestro apoyo ni rechazo de la actividad acordada. Ninguna parte de este Acuerdo impedirá presentar y llevar adelante procedimientos ante la Comisión de Oportunidades Igualitarias de Empleo del Departamento de Trabajo de los Estados Unidos y la Comisión Nacional de Relaciones Laborales u organismos comparables, pero comprendo que estoy renunciando a la oportunidad de recuperar sumas monetarias de tales procedimientos. En otras palabras, debe presentar cualquier reclamo de compensación monetaria por Reclamos cubiertos a través del arbitraje conforme a este Acuerdo.

5. Renuncia a reclamos de clase y colectivos. La Compañía y yo acordamos que los Reclamos cubiertos serán arbitrados en forma individual. Todo reclamo conforme a este Acuerdo deberá ser presentado de manera individual por mí o por la Compañía, y deberá presentarse en el condado donde haya surgido la disputa (a menos que acordemos mutuamente lo contrario). Este Acuerdo no permite ni deberá interpretarse que permite la consolidación o unificación de otros reclamos o controversias que involucren a cualquier otro empleado o parte, ni permite que dichos reclamos o controversias se tramiten como demanda de clase o colectiva. Ningún árbitro tendrá autoridad conforme a este Acuerdo para ordenar demandas de clase o colectivas. La Compañía y yo aceptamos renunciar a cualquier derecho sustantivo o procedimental que pudiéramos tener de participar, iniciar o recibir compensación monetaria o de otro tipo en relación con una demanda de clase o colectiva contra la otra parte.

6. Resolución interna de disputas. La Compañía y yo valoramos nuestra relación laboral y reconocemos que solucionar los problemas o inquietudes internamente puede ayudar a una resolución más eficiente de los problemas. Acordamos que preferimos resolver los problemas por medio de los canales dentro del lugar de trabajo, lo que incluye presentar quejas uno a otro, a fin de intentar resolver los problemas informalmente antes de someterlos a arbitraje. En este aspecto, la Compañía y yo comprendemos que el uso de arbitraje está previsto como último recurso.

7. Reglas del arbitraje. Para presentar una demanda de arbitraje, la parte que desee dirimir una disputa legal debe preparar una demanda por escrito donde explique el (los) reclamo(s). Se aplicarán las reglas de resolución de disputas laborales de la Asociación Estadounidense de Arbitraje (American Arbitration Association, "AAA"). La versión vigente puede encontrarse aquí: https://adr.org/employment. La Compañía y yo tendremos derecho de presentar pruebas según lo establezcan las reglas de resolución de disputas laborales de la AAA.

8. Selección del árbitro neutral. El árbitro se seleccionará de acuerdo con las reglas de resolución de disputas laborales de la AAA. El árbitro deberá ser neutral.

9. Autoridad del árbitro. El árbitro tendrá la inmunidad de un funcionario judicial en cuanto a la responsabilidad civil cuando actúe como árbitro, la cual se complementará con cualquier otra inmunidad existente. El árbitro deberá emitir un dictamen por escrito, donde establezca los motivos y el fundamento legal de su determinación. El árbitro debe resolver todas las disputas exclusivamente sobre la base de las leyes que rigen los reclamos y las defensas argumentadas, y no puede invocar ningún otro fundamento (inclusive, sin limitación, nociones de "justa causa") diferente de dichas leyes aplicables. El árbitro tendrá autoridad para disponer la misma indemnización y otra compensación en favor mío y de la Compañía que hubiera estado disponible en los tribunales conforme a la ley aplicable. La decisión del laudo del árbitro puede archivarse en cualquier tribunal competente en la materia.

10. <u>Costos</u>. Comprendo que la Compañía deberá pagar los costos exclusivamente atribuibles al arbitraje, incluidos las tarifas y costos administrativos del árbitro. Cada lado deberá pagar sus propios costos y honorarios de abogados, si hubiere, a menos que el árbitro determine lo contrario de conformidad con las leyes aplicables. Si las leyes aplicables contemplan el pago de los honorarios de abogados y costos de la parte vencedora, el árbitro debe aplicar las mismas normas que aplicaría un tribunal para adjudicar dichos honorarios y costos.

11. <u>Acuerdo de la Compañía.</u> Al presentarme este Acuerdo, la Compañía ha aceptado los términos de este Acuerdo.

12. <u>Acuerdo total y cláusula de divisibilidad</u>. El presente representa el acuerdo total entre la Compañía y yo con respecto a la resolución de disputas, la duración de mi empleo y los motivos para finalizar mi empleo, y este Acuerdo reemplaza todo otro acuerdo anterior con respecto a estos temas. Las declaraciones orales o acuerdos realizados antes o después de mi empleo no alteran este Acuerdo. Si se determina que cualquier término, disposición o parte de este Acuerdo es inválido o inexigible, este deberá separarse y el resto del Acuerdo será completamente exigible; sin embargo, si se determina que la renuncia a las demandas de clase o colectivas es inexigible, cualquier reclamo presentado en una demanda de clase, colectiva o representativa debe hacerse ante un tribunal de jurisdicción competente, y dicho tribunal será el único foro para dirimir dichos reclamos.

13. <u>Condición del empleo</u>. Este Acuerdo es una condición de mi empleo en la Compañía. Si comienzo y/o continúo mi empleo en la Compañía estoy aceptando este Acuerdo. Confirmo que he leído atentamente este Acuerdo, que comprendo sus términos y que celebré voluntariamente este Acuerdo y no a cambio de promesas u otras declaraciones de la Compañía.

14. <u>Ley aplicable</u>. La Compañía y yo aceptamos que este Acuerdo se celebra de conformidad con la Ley federal de arbitraje y se regirá por esta.

53241014v.5

# Exhibit C

## Compliance

Review the details of each associate's policy compliance acknowledgements and send reminders as needed.

Search by Associate Name or ID: mcowens

Search by Policy Name: [ ]  Filters

[Send A Reminder]

| Associate | Associate ID | Date Hired | Assigned | Pending | Past Due |
|---|---|---|---|---|---|
| ▼ Reginald McOwens | 1000278442 | 04/10/2022 | 8 | 0 | 0 |

| Policy | Type | Acknowledgement Type | Acknowledgement Status | Acknowledgement Due Date | Acknowledged On |
|---|---|---|---|---|---|
| Vaccination or Testing Polic... | OSHA COVID-19 ETS | Basic Acknowledgement | Acknowledged | 04/18/2022 | 07/11/2022 |
| OSHA COVID-19 ETS | OSHA COVID-19 ETS | Basic Acknowledgement | Acknowledged | 04/18/2022 | 07/11/2022 |
| Wisely Pay Card Disclosure | Onboarding | Basic Acknowledgement | Acknowledged | 04/13/2022 | 07/11/2022 |
| Confidentiality and Non-Sol... | Onboarding | Basic Acknowledgement | Acknowledged | 04/13/2022 | 07/11/2022 |
| Production Pay Acknowled... | Onboarding | Basic Acknowledgement | Acknowledged | 04/13/2022 | 07/11/2022 |
| Associate Handbook Ackno... | Onboarding | Basic Acknowledgement | Acknowledged | 04/13/2022 | 07/11/2022 |
| Wisely Payroll Funding Elec. | Onboarding | Basic Acknowledgement | Acknowledged | 04/13/2022 | 04/23/2022 |
| Employment At Will and Ar... | Onboarding | Basic Acknowledgement | Acknowledged | 04/13/2022 | 04/23/2022 |